## Francis Elkins, D. F. Stitler and S. M. Stitler, Partners as to the subject-matter in suit, doing business as Stitler & Elkins, *v.* R. S. Winlack, Appellant.

*Negligence—Question for jury.*

Where the injury complained of manifestly resulted from the negligence of either the plaintiff or defendant, the burden of determining the liability for the incident loss is properly for the jury, and having been left to them in a fair and adequate charge, the appellate court will not disturb the verdict.

*Lumbering—Boats attached to moored raft.*

A raft, having been moored to the shore by plaintiffs, broke loose after defendant's raft had been moored to it. *Held*, that plaintiffs had the right to moor their raft to the shore and defendant to tie up his raft to the shore raft, and that the liability for any loss must be determined by the jury dependent on whether the loss was incident to the raft breaking loose by reason of its own lines being defective, or by the negligent conduct of the defendant in the manner in which he tied up his raft to that of plaintiffs.

Argued May 2, 1899.   Appeal, No. 148, April T., 1899, by defendant, from judgment of C. P. Jefferson Co., Feb. T., 1894, No. 236, on verdict for plaintiffs.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed. Opinion by ORLADY, J.

Trespass.   Before GORDON, P. J., of the 46th judicial district, specially presiding.

It appears from the record that this was an action brought to recover damages alleged to have been sustained by plaintiff by reason of the negligent acts of defendant's employees in causing plaintiffs' raft to go adrift and be lost by reason of the negligent manner in which defendant moored his raft to the raft of plaintiffs then moored to the shore.

The court below charged the jury in part as follows:

[We, however, say to you, that where a moving fleet, in thus attempting to land, uses an intervening raft for the purpose, and tears it from its moorings, even without any fault on their part, they are under obligation to reclaim the lumber thus torn loose and sent adrift, if it is possible for them to do so.] [1]   The

risk in such emergency being great, greater obligation rests upon the party to exercise care, prudence and skill, and yet at the same time it is not to be expected that persons under great excitement will, or can, use the same amount of good and deliberate judgment as could be expected under other circumstances. . . .

It is claimed on the part of the plaintiffs in this case that their fleet of rafts was carefully looked after; was rerafted but a short time prior to this accident; that it was securely moored to the shore; that it was anchored by good sound cables which were purchased new the preceding June, the accident happening in December; that they took the proper precautions in having it looked after, placing it in the charge of Mr. Farmaree, who lived as we stated, but a short distance away, an experienced man whose business it was to look after and sell timber for the lumbermen upon the river.

That on the 3d day of December, 1893, the defendant's employees came along with a fleet of four boats.   In the first place, they claim that there was an abundance of room along the bank of the stream at the eddy, the landing place, for them to land without going upon the plaintiffs' raft.   Now, gentlemen of the jury, if that be true they were trespassers in doing what they did; their right to go upon and use the plaintiffs' rafts, for the purpose of checking their own, to enable them to anchor to the shore, would only exist as a matter of necessity, in case there was no reasonable place where they could land, or where it had the appearance that they could land it at no other point with safety along that eddy.   [The plaintiffs further claim that the defendant's employees negligently anchored their rafts upon this fleet; that they made a dead hitch with their rope upon this fleet thus anchored, tearing it from its moorings and causing it to go adrift.] [2]

Verdict and judgment for plaintiffs for $725.48.   Defendant appealed.

*Errors assigned* were (1, 2) to portions of the judge's charge, reciting same.

*Cadmus Z. Gordon*, for appellant.—The Allegheny river is a public highway and as such all men have the right to use it in a

lawful manner, having a due regard to the rights of others. Far-maree's eddy is, next to Herr's island, the most generally used landing place for rafts and fleets upon the river. It may well be doubted whether any one has the right to use such a part of the river as a storage place for his lumber and thus impede navigation for a period of six months and upward. If, by so doing, he wholly prevented navigation his fleet might be removed by other navigators without liability for loss except for gross negligence: Beach v. Schoff, 28 Pa. 195; Philiber v. Matson, 14 Pa. 306. However, as it is not possible to remove rafts and fleets from the river for storage, and as the landing places are wholly insufficient to allow every fleet to moor beside the banks of the stream, the lumbermen have adopted certain usages or customs of the river which are required by the exigencies of the particular business and without which it would be impossible to carry on the same properly. One of these customs is that pertaining to the checking of the moving fleet by taking a hitch upon the moored fleet which lies between it and the shore and thus prevents such speedy access to hitching posts on shore as is necessary to insure the stopping of the fleet.

The defendant has shown by the testimony of a large number of witnesses having experience as Allegheny river lumbermen, ranging from ten years to fifty-two years, that this method of checking has been universally practised during more than half a century by all lumbermen on the river; that the practice has been a continuous one; that it has been peaceably acquiesced in by all; that it is a reasonable usage without the exercise of which the lumbering industry could not be carried on successfully and that it is well known by all rivermen.

The tenor of the general charge, which is the subject of the first assignment of error, casts the entire burden of making good the results of plaintiffs' negligence upon the defendant; we think this was error.

In other words, if the plaintiff is negligent he must bear the loss of his line (which is the only damage done by the mere tearing loose of the fleet) but the defendant must bear all subsequent losses.

The rule as stated by the court below contravenes the law of concurrent and contributory negligence as firmly established by our state courts. Our courts have repeatedly refused to allow

any modifications of or innovations upon this rule : Mattimore v. Erie City, 144 Pa. 14, 23.

The doctrines of contributory negligence apply as well on rivers as on land, as shown by Simpson v. Hand, 6 Wh. 311, 321.

It may be contended that proper instructions were given in other parts of the charge ; we do not think, however, such is the fact. As before pointed out the court below undertakes to impose a new liability on defendant after the fleet is broken loose without fault on his part.

Even if proper instructions had been given in other parts of the charge they would not cure the error : Selin v. Snyder, 11 S. & R. 319 ; Work v. Maclay, 2 S. & R. 415 ; Gearing v. Lacher, 146 Pa. 397 ; Baker v. Hagey, 177 Pa. 128 ; Pister v. Keystone Mutual Benefit Association, 3 Pa. Superior Ct. 50.

The error here complained of is that part of the above assignment which in substance submits to the jury the claim of plaintiffs that defendant's employees took a " dead hitch " upon the fleet.

A dead hitch is that which is taken by making the line fast at both ends so that there is no giving or running out of the line but the whole weight of the moving fleet comes on the line with a sudden jerk. Such hitch is taken only in cases of extreme peril and is admittedly dangerous ; no excuse could be found for the taking of a dead hitch by defendant's employees upon plaintiffs' fleet under the circumstances ; such hitch would be worse than negligence.

The difficulty with this part of the charge is that there was absolutely no evidence to support such a claim.

This is not a harmless inaccuracy ; it is the turning point of the whole case and well may have misled the jury : Winters v. Mowrer, 163 Pa. 239.

Similar rulings are made in the following cases : Stouffer v. Latshaw, 2 Watts, 165 ; Hannay v. Stewart, 6 Watts, 487 ; Gilchrist v. Rogers, 6 W. & S. 488 ; Bradley v. Grosh, 8 Pa. 45 ; Lower v. Clemont, 25 Pa. 63 ; Herdic v. Bilger, 47 Pa. 60 ; Selser v. Roberts, 105 Pa. 242 ; Brooks v. P. R. R. Co., 2 Pa. Superior Ct. 581.

The learned judge who presided manifested a spirit of fairness and impartiality throughout the whole trial ; we think that with the exception of the two errors above set forth, his

rulings, charge and answers were correct; we believe, however, that he erred in that part of the charge which constitutes the first assignment through an attempt to apply rules which obtain in admiralty courts and that he even stated the rule too strongly for the latter courts. That part of the charge which constitutes the second assignment was given, doubtless, inadvertently.

*G. A. Jenks*, with him *W. F. Stewart*, for appellees.—The case of Beach v. Schoff, 28 Pa. 195, cited by the appellant, was a case where an obstructing raft was lodged on the breast of the dam, leaving no room to pass; also the case of Philiber v. Matson, 14 Pa. 306, was where a raft stuck in a narrow stream, allowing nothing to pass, and the water falling. Both these rafts were entirely out of place, and neither case is applicable to the question before us. The appellees' fleet was safely moored on the shore of the broad Allegheny river, where they had the right to be. There was plenty of room to pass, and ample room to land below where appellee's timber was, where appellant's men could have landed before they tore us loose, and did, in fact, afterwards safely land. The citation of authorities so remote from the question before us is only confusing. So far as Simpson v. Hand, 6 Wh. 311, is concerned, there has been nowhere in the trial any dispute on the law as to contributory negligence. This question was fairly and fully submitted to the jury, under the instructions of the court, on this question; they certainly must have found that there was no contributory negligence, before they returned a verdict for the plaintiff. We appeal to the evidence that it supports this finding.

To correctly interpret the full force of that part of the general charge in the first exception it must be read in connection with the context accompanying it in the whole paragraph.

This is not inconsistent with the doctrine laid down in Mc-Grew v. Stone, 53 Pa. 436, where Justice AGNEW says in regard to any one dealing with the property of another, that he is liable " if he does not take all the care which prudence would suggest to avoid the injury."

The evidence shows, that although defendant's employees had a long river line, the snubber had only played out what,

with the amount it took to reach the shore fleet and hitch to it, made about seventy-five feet, so they could not have played out or run on the snubbing post over thirty feet. They certainly must have had a dead or tight hitch on the snubber, as well as on the fleet at this point, or they could not have pulled the fleet loose and snapped the line in the manner described. It certainly was negligence to take this hitch, at the place they did, before the momentum of the boats was reduced. They might as well have taken a dead hitch on the moving fleet at the same time that Harry Brown took the dead hitch on the plaintiffs' fleet. It is quite evident if they had played out another hundred feet of cable, the boats might have safely dropped to the shore below without pulling plaintiffs' fleet loose. We, therefore, confidently affirm that the court was authorized by the evidence and committed no error in that part of the charge embraced in the second assignment, and it does not come under the rulings in any of the authorities cited in appellant's argument on this point.

OPINION BY ORLADY, J., July 28, 1899:

The plaintiffs, in June, 1893, moored four oak timber rafts at a landing place known as Farmaree's eddy in the Allegheny river and fastened them to shore objects by two ropes. In November following the rafts were inspected and rerafted by replacing defective bows and pins with new ones, and the plaintiffs contended that they were made fast to the shore in a secure manner. In December next the defendant's fleet of four boats, being in charge of a pilot and four others, and while passing down the river, attempted to make a landing at Farmaree's eddy. To effect this the defendant's employees went upon the plaintiffs' rafts and made fast their ropes. The result was that the fastenings with which the plaintiffs' rafts were tied to the shore were broken, the rafts going adrift in the river, some of the timber being lost and the balance scattered along the course of the river, which greatly lessened the market value of the timber.

The plaintiffs alleged that the loss occurred by reason of the negligence of the defendant's employees in fastening his boats to the plaintiffs' rafts. It is not possible to remove rafts and fleets from the river for storage, and it is admitted that there are not sufficient landing places and eddies along the river to

permit a shore mooring for every raft or fleet. The defense was, that pursuant to a well known and long established custom the defendant had the right to moor his boats to the plaintiffs' rafts, all of which was stated to be correct by the trial judge in answer to the plaintiffs' fifth point. The appellant frankly admits, that " it is certain that the plaintiffs' fleet was torn loose either because their own line was insufficient to properly moor it or because of defendant's negligence. In other words there manifestly was negligence on the one side or the other."

The first assignment of error does not represent the completed thought of the trial judge, but taken in connection with the sentence immediately following, the idea suggested is presented in the correct light. The designation of " a dead hitch," as used by the trial judge in his charge to the jury, had reference to the contention of the plaintiffs and is so stated, but in view of the answer given to the defendant's points it could not affect the finding. The term was not used by the witnesses. They were fully examined as to what took place at the time the landing was attempted to be made, so that the jury fully understood the facts. The assignments of error are overruled and the judgment is affirmed.